**Charles R. KING, Plaintiff Below, Appellant,**

v.

**VERIFONE HOLDINGS, INC., Defendant Below, Appellee.**

**No. 330, 2010.**

Supreme Court of Delaware.

Submitted: Dec. 15, 2010.
Decided: Jan. 28, 2011.

---

13. Del.Code Ann. tit. 21, § 2118(a)(2)e.

David A. Jenkins and Michele C. Gott, Esquires, of Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware; Of Counsel: Judith S. Scolnick (argued) and Tom Laughlin, Esquires, of Scott + Scott LLP, New York, New York; for Appellant.

Raymond J. DiCamillo and Kevin M. Gallagher, Esquires, of Richards, Layton & Finger, P.A., Wilmington, Delaware; Of Counsel: Robert A. Sacks, Esquire (argued), of Sullivan & Cromwell LLP, Los Angeles, California; Brendan P. Cullen, Laura Kabler Oswell and Ryan J. McCauley, Esquires, of Sullivan & Cromwell LLP, Palo Alto, California; for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice:

The sole issue on this appeal is whether a stockholder-plaintiff who has brought a stockholder's derivative action without first prosecuting an action to inspect books and records under 8 *Del. C.* § 220 is, for that reason alone, legally precluded from prosecuting a later-filed Section 220 proceeding. Charles R. King ("King"), the plaintiff-below appellant, brought this Section 220 action for a court-ordered inspection of certain books and records of the corporate defendant-below, appellee VeriFone Holdings, Inc. ("VeriFone"). The Court of Chancery dismissed King's complaint, holding that King lacked a proper purpose under Section 220, because he had previously elected to prosecute a derivative action in the United States District Court for the Northern District of California (the "California Federal Court"). On appeal, King claims that the Court of Chancery erred as a matter of law in concluding that the prior filing of his California derivative action constituted an "election" that precluded him from seeking relief in a later Section 220 books and records proceeding. We agree and, therefore, reverse the judgment of the Court of Chancery.

### *FACTUAL AND PROCEDURAL BACKGROUND* [1]

1. The facts are taken from the parties' filings, the Court of Chancery opinion (*King v. VeriFone Holdings, Inc.,* 994 A.2d 354 (Del.Ch. 2010)), and the opinions of the United States District Court for the Northern District of California in *In re VeriFone Holdings, Inc.*

VeriFone, a Delaware corporation whose principal place of business is in San Jose, California, designs, markets, and services electronic payment transaction systems. On November 1, 2006, VeriFone acquired the Israeli-based Lipman Electronic Engineering Ltd. ("Lipman"), which was then the world's fourth-largest point-of-sale terminal maker. That acquisition made VeriFone the world's largest provider of electronic payment solutions and services.

On December 3, 2007, VeriFone publicly announced that it would restate its reported earnings and net income for the prior three fiscal quarters. Both sets of numbers had been materially overstated due to accounting and valuation errors made while Lipman's inventory systems were being integrated with VeriFone's.[2] After that restatement announcement, VeriFone's stock price dropped over 45%, and the company was subjected to litigation and regulatory investigations. One day after the announcement, several VeriFone shareholders filed a class action in the California Federal Court, asserting various federal securities fraud claims against VeriFone, its Chief Executive Officer, and its Chief Financial Officer. The United States Securities and Exchange Commission ("SEC") also launched an investigation and filed a civil complaint in the California Federal Court, charging VeriFone with federal securities law violations.[3]

## A. The California Derivative Complaint

King beneficially owns 3000 VeriFone shares, of which he has held at least 500 since December 11, 2006. On December 14, 2007, King filed a stockholder derivative action on behalf of VeriFone against certain of its officers and members of its board of directors ("Board") in the California Federal Court. Three other federal derivative actions followed. All four cases were consolidated, and the California Federal Court appointed King as lead plaintiff.

On October 31, 2008, King filed a consolidated amended derivative complaint in the California Federal Court action, claiming that various VeriFone officers and directors had committed breaches of fiduciary duty and corporate waste. Specifically, King alleged that VeriFone's officers and Board had: (a) made materially false financial statements to the SEC and the public; (b) abdicated their fiduciary duties by allowing VeriFone to operate with material weaknesses in its internal controls over financial reporting, while representing publicly that the company had effective internal controls; and (c) allowed eight VeriFone directors and/or officers, while possessing material insider information, to sell over 12.4 million of their VeriFone shares for a $462 million dollar profit.[4]

VeriFone moved to dismiss King's consolidated complaint for failure to make a pre-suit demand upon its Board, as required by Federal Rule of Civil Procedure (FRCP) 23.1(b)(3).[5] On May 26, 2009, the

---

S'holder Derivative Litig., 2009 WL 1458233 (N.D.Cal. May 26, 2009) ("In re VeriFone I ") and In re VeriFone Holdings, Inc. S'holder Derivative Litig., 2010 WL 3385055 (N.D.Cal. Aug. 26, 2010) ("In re VeriFone II ").

**2.** An investigation revealed that a former supply chain controller had made inventory accounting errors for the newly-integrated company. Manual multi-million dollar adjustments to VeriFone's inventory were made, which falsely decreased the cost of goods sold and resulted in inaccurate gross margin calculations.

**3.** SEC v. VeriFone Holdings, Inc., Docket No. 5:09–CV–04046–RS (N.D.Cal.).

**4.** In re VeriFone I, 2009 WL 1458233, at *2–3.

**5.** FED R.CIV.P. 23.1(b)(3) requires a shareholder bringing a derivative suit file a verified complaint that states with particularity:

(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
(B) the reasons for not obtaining the action or not making the effort.

California Federal Court granted Veri-Fone's motion, holding that King's consolidated complaint failed to allege particularized facts that would excuse a pre-suit demand.[6] That dismissal was without prejudice.[7] In granting leave to amend the complaint, the California Federal Court suggested that King first "engage in further investigation to assert additional particularized facts" by filing a Section 220 action in Delaware.[8] In that regard, the California Federal Court observed that: "Since [King's] purpose is to obtain the particularized facts needed to adequately allege demand futility and to show corporate wrongdoing, rather than to investigate new potential claims, [King] should gain access to certain of VeriFone's documents and records for the Relevant Period."[9]

On June 9, 2009, King submitted to VeriFone a written demand to inspect specified categories of documents. The parties were able to resolve all of King's requests except one—the Audit Committee Report ("Audit Report"), which contained the results of an internal investigation of Veri-Fone's accounting and financial controls that had been conducted after the December 3, 2007 restatement announcement.[10]

## B. *King's Section 220 Action*

Unable to resolve the dispute through mediation, on November 6, 2009, King filed this Section 220 action in the Court of Chancery for an order permitting him to inspect the Audit Report and any documents relied upon in its preparation. In his Chancery complaint, King referenced an April 2, 2008 press release from Veri-Fone, which stated that "[a]s a result of the issues identified by [VeriFone's] management and the Audit Committee independent investigation, management has concluded that VeriFone did not maintain effective internal control over financial reporting."[11] That press release, King alleged, showed that the Audit Report was essential to enable him to plead demand futility in the California Federal action, because the Audit Report would likely show that VeriFone's officers and Board knew of the company's inadequate financial reporting controls, yet consciously disregarded that fact in violation of their fiduciary duty of loyalty.

VeriFone moved to dismiss the Section 220 complaint under Court of Chancery Rule 12(b)(6), claiming that King had "initiated this litigation backwards" by first filing his derivative suit in California. Citing an earlier Court of Chancery decision, *Beiser v. PMC–Sierra, Inc.,*[12] VeriFone argued that King's Section 220 action violated the long-standing public policy-based rule that derivative plaintiffs should utilize the Section 220 inspection process before commencing a derivative action.

The Court of Chancery agreed and dismissed King's action, holding that King lacked a "proper purpose" for inspection as 8 *Del. C.* § 220 requires. The Vice Chancellor reasoned that because King had "elected" to file his California derivative action before conducting a pre-suit

6. *In re VeriFone I*, 2009 WL 1458233, at *13.

7. *Id.*

8. *Id.*

9. *Id.*

10. The Audit Committee's investigation and report was aided by independent legal counsel, Simpson Thatcher & Bartlett LLP, and independent forensic accountants, Navigant LLC.

11. Press Release, VeriFone Holdings, Inc., VeriFone Completes Independent Investigation (Apr. 2, 2008), *available at* http://ir.verifone.com/phoenix.zhtml?c=187628&p=irol-newsArticle&ID=1124663&highlight=.

12. 2009 WL 483321 (Del.Ch. Feb. 26, 2009).

investigation (including resort to the Section 220 process), King was precluded from using the Delaware courts to obtain discovery that was unnecessary or unavailable in his federal derivative action.[13] In reaching this result, the Court of Chancery articulated the following bright-line rule:

[S]tockholders who seek books and records in order to determine whether to bring a derivative suit should do so before filing the derivative suit. Once a plaintiff has chosen to file a derivative suit, it has chosen its course and may not reverse course and burden the corporation (and its other stockholders) with yet another lawsuit to obtain information it cannot get in discovery in the derivative suit.[14]

To hold otherwise, the Court of Chancery concluded, would offend public policy and encourage an "inefficient race to the courthouse." [15]

This appeal followed.[16]

## ANALYSIS

■ On appeal, King claims that the Court of Chancery erred in dismissing his Section 220 action for lack of a proper purpose solely because he "elected" to file his California federal derivative action before resorting to the Section 220 process. That bright-line rule, King claims, runs

13. *King v. VeriFone Holdings, Inc.*, 994 A.2d 354, 356–57 (Del.Ch.2010). Under the current state of the federal case law, the availability of discovery in a derivative federal action appeared unsettled. It is unclear whether the Private Securities Litigation Reform Act ("PSLRA"), which stays discovery in private *class* actions arising under federal securities law, also applies to *derivative* actions. *See In re Openwave Sys. Inc. S'holder Derivative Litig.*, 503 F.Supp.2d 1341, 1351 (N.D.Cal.2007) ("The Ninth Circuit has not addressed whether discovery must be stayed in a derivative action that has failed to surpass a Rule 23.1 challenge."). "The few courts that have applied . . . the PSLRA [discovery stay] to derivative actions have primarily done so where the action also includes a class action security fraud claim." *Id.* at 1352 (citing federal cases). Another Federal District Court has observed that "[w]hile the case law on the interplay between the PSLRA automatic stay and discovery in state law derivative actions is less than perfectly consistent, on the whole federal courts have refused to stay discovery in derivative actions brought independently of parallel securities fraud class actions." *In re First Bancorp Derivative Litig.*, 407 F.Supp.2d 585, 586 (S.D.N.Y.2006) (citing cases and concluding that "separate derivative actions are not automatically subject to the discovery stay of the PSLRA and . . . such actions, not being subject to many of the class action abuses at which the PSLRA was especially directed, do not usually warrant such a stay." (internal citation omitted)).

14. *King*, 994 A.2d at 356–57.

15. *Id.* at 362–63.

16. The California Federal Court ordered King to file his second amended derivative complaint within 30 days after he received all of the requested documents from VeriFone. When it became apparent that the parties would not be able to resolve the Audit Report dispute, King filed his second amended derivative complaint in the California Federal Court on December 10, 2009. On August 26, 2010, after the Court of Chancery dismissed King's Section 220 action, the California Federal Court dismissed King's second amended derivative complaint with prejudice for failure to make demand under FRCP 23.1. *In re VeriFone II*, 2010 WL 3385055 (N.D.Cal. Aug. 26, 2010). Although appellees claim that that dismissal effectively moots this appeal, we conclude otherwise, because the Court of Chancery decision announced a principle of Delaware law that could have significant impact in future cases, and that, therefore, should be subject to appellate review before it becomes operational prospectively. *See, e.g., Radulski v. Del. State Hosp. ex rel. Div. of Alcoholism, Drug Abuse, & Mental Health*, 541 A.2d 562, 566 (Del.1988) ("Ordinarily, this Court will decline to decide moot issues. However, where the question is of public importance, and its impact on the law is real, this Court has recognized an exception to the above rule." (internal quotation marks and citations omitted)).

afoul of Delaware decisions where this Court and the Court of Chancery expressly permitted similarly-situated derivative plaintiffs to bring Section 220 actions to uncover facts that could enable them to plead demand futility with particularity in amending their (earlier-dismissed) derivative complaints.

■ We review a trial court's conclusions of law *de novo*.[17] We will not, however, disturb the trial court's factual findings so long as those findings are sufficiently supported by the record and are the product of an orderly and logical reasoning process.[18]

We conclude that the Court of Chancery's bright-line rule barring stockholder-plaintiffs from pursuing inspection relief under 8 *Del. C.* § 220 solely because they filed a derivative action first, does not comport with existing Delaware law or with sound policy. We set forth our reasoning below.

## I. Section 220 As A Tool To Aid Demand Excusal

Section 220 expressly grants a stockholder of a Delaware corporation the right to inspect that corporation's books and records.[19] That right is not absolute, however, because to obtain inspection relief the stockholder must demonstrate a proper purpose for making such a demand.[20] A "proper purpose" is defined as "a purpose reasonably related to such person's interest as a stockholder."[21] To cite one example, investigating corporate mismanagement—the purpose stated by King—is a proper purpose for seeking a Section 220 books and records inspection.[22]

■ Delaware courts have strongly encouraged stockholder-plaintiffs to utilize Section 220 before filing a derivative action, in order to satisfy the heightened demand futility pleading requirements of Court of Chancery Rule 23.1.[23] To show demand futility, a stockholder-plaintiff in a derivative suit must allege with particularity why the stockholder was justified in having made no effort to obtain board action.[24] By first prosecuting a Section

17. *Stegemeier v. Magness*, 728 A.2d 557, 561 (Del.1999).

18. *Id.*

19. 8 *Del. C.* § 220.

20. 8 *Del. C.* § 220(c)(3) ("Where the stockholder seeks to inspect the corporation's books and records, other than its stock ledger or list of stockholders, such stockholder shall first establish that ... [t]he inspection such stockholder seeks is for a proper purpose.").

21. 8 *Del. C.* § 220(b).

22. *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 567 (Del.1997) ("It is well established that investigation of [corporate] mismanagement is a proper purpose for a § 220 books and records inspection.").

23. *See, e.g., Scattered Corp. v. Chi. Stock Exch.*, 701 A.2d 70, 78 (Del.1997), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del.2000) (explaining the demand futility requirement of Court of Chancery Rule 23.1). The United States Supreme

Court has held that "a court that is entertaining a derivative action ... must apply the demand futility exception as it is defined by the law of the State of incorporation." *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90, 108–09, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

24. Court of Chancery Rule 23.1(a) states that "[t]he complaint shall ... allege with particularity the efforts, if any ... to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort." As explained in *Aronson v. Lewis*, one ground for alleging demand futility is that a "reasonable doubt" exists as to whether the board is capable of making an independent decision to assert the claim if demand were made. 473 A.2d 805, 814 (Del.1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del.2000). Other reasons for showing demand excusal would be: (1) a majority of the board has a material financial or familial interest; (2) a majority of the board is incapable of acting independently

220 action to inspect books and records, the stockholder-plaintiff may be able to uncover particularized facts that would establish demand excusal in a subsequent derivative suit.[25]

A failure to proceed in that specific sequence, however, although ill-advised, has not heretofore been regarded as fatal. In several instances a stockholder-plaintiff initiated a derivative suit without first prosecuting a Section 220 books and records action. Where those derivative suits were dismissed for failure to plead demand futility adequately, both this Court and the Court of Chancery permitted the stockholder-plaintiffs to utilize the Section 220 inspection process to gather new information and replead their derivative complaints. Three selected Delaware cases are illustrative.

*A. Cases Where Section 220 Inspection Allowed, Despite An Earlier–Filed Derivative Action*

1. *The Disney Litigation*

In *In re Walt Disney Co. Derivative Litigation,*[26] the stockholder-plaintiffs filed a derivative action in the Court of Chancery, claiming that the Disney directors had breached their fiduciary duties by approving an employment contract with Disney's president, which contained a very large severance package, and thereafter, by approving a non-fault termination of the president under that contract.[27] The Court of Chancery dismissed the stockholder-plaintiffs' derivative complaint with prejudice for failure to make a pre-suit demand upon the Disney board.[28] On appeal, this Court affirmed, but held that the derivative complaint should have been dismissed without prejudice.[29] This Court further suggested that the plaintiffs use 8 *Del. C.* § 220 as a tool to develop facts sufficient to replead demand futility in an amended derivative complaint.[30]

Following that suggestion, the stockholder-plaintiffs prosecuted a Section 220 action in the Court of Chancery seeking inspection of Disney's books and records.[31] Armed with additional information, the plaintiffs thereafter filed an amended complaint in their (earlier-dismissed) derivative action. This time, that complaint survived a renewed Rule 23.1 motion to dismiss. The Court of Chancery held that pre-suit demand was excused, because the amended complaint adequately pled demand futility, based on particularized facts uncovered through the Section 220 inspection, which showed a lack of board oversight so egregious that it called into question whether the directors had exercised their fiduciary duties in good faith.[32]

---

for some other reason such as domination or control; or (3) the underlying transaction is not the product of a valid exercise of business judgment. *See id.* at 814–15.

**25.** *Beam v. Stewart,* 845 A.2d 1040, 1056 n. 51 (Del.2004); *Rales v. Blasband,* 634 A.2d 927, 934 n. 10 (Del.1993) (describing Section 220 as one of "many avenues available [for plaintiffs] to obtain information" needed to meet the pleading requirements of Rule 23.1.).

**26.** *In re Walt Disney Co. Derivative Litig.,* 731 A.2d 342 (Del.Ch.1998) ("*Disney I*"), aff'd in part and rev'd in part sub nom. *Brehm v. Eisner,* 746 A.2d 244 (Del.2000), motion to dismiss denied, *In re Walt Disney Co. Derivative Litig.,* 825 A.2d 275 (Del.Ch.2003) ("*Disney II*").

**27.** *Disney I,* 731 A.2d at 352.

**28.** *Id.* at 364–65.

**29.** *Brehm,* 746 A.2d at 248.

**30.** *Id.* at 266–67.

**31.** *Disney II,* 825 A.2d at 279.

**32.** *Id.* at 278–79.

### 2. *The McKesson HBOC Litigation*

The *McKesson HBOC* litigation is a second example. There, stockholder-plaintiffs of McKesson HBOC filed a derivative action in the Court of Chancery against certain directors of McKesson HBOC and its subsidiary, HBOC.[33] The complaint alleged breaches of fiduciary duty based on accounting irregularities arising out of a previous merger between McKesson Corporation and HBO & Company.[34] Despite having twice amended their derivative complaint, the stockholder-plaintiffs were again found to have failed to plead particularized facts establishing demand excusal.[35] Dismissing their complaint without prejudice, the Court of Chancery advised plaintiffs to use Section 220 as a tool to obtain facts necessary to plead demand futility adequately before filing a further amended derivative complaint.[36]

One plaintiff (Saito) followed that advice and filed a Section 220 action demanding inspection of corporate books and records. A claimed purpose for Saito's demand was "to gather information [relating to potential breaches of fiduciary duties] . . . in order to supplement [his earlier dismissed] complaint . . . in accordance with the [Court of Chancery's earlier] opinion."[37] The Court of Chancery found that purpose to be proper under Section 220, and granted Saito inspection relief.[38] Using facts gleaned from his Section 220 inspection, Saito then filed an amended complaint in the plenary derivative action, which survived a Rule 12(b)(6) motion to dismiss for failure to make a pre-suit demand under Rule 23.1.[39]

### 3. *The Melzer Case*

A third example is *Melzer v. CNET Networks*, which factually is similar to this case.[40] Unlike *Disney* and *McKesson HBOC*, where the plenary derivative actions were first-filed in the Delaware Court of Chancery, the plaintiffs in *Melzer* (like King here) first filed a plenary derivative action in the California Federal Court.[41] The *Melzer* plaintiffs alleged that the board of CNET Networks ("CNET") had breached their fiduciary duty, and violated federal securities law, by granting backdated stock options to former and current directors.[42] CNET moved to dismiss the derivative complaint under FRCP 23.1

**33.** *Ash v. McCall*, 2000 WL 1370341 (Del.Ch. Sept. 15, 2000); *Saito v. McKesson HBOC, Inc.*, 2001 WL 818173 (Del.Ch. July 10, 2001) ("*Saito I* "), *aff'd in part and rev'd in part*, 806 A.2d 113 (Del.2002) ("*Saito II* ").

**34.** *Ash*, 2000 WL 1370341, at *1.

**35.** *Id.*

**36.** *Id.* at *15 n. 56 ("I leave it to plaintiffs to adduce such facts through various pre-discovery fact-gathering methods they have at their disposal. As the Delaware Supreme Court has repeatedly exhorted, shareholder plaintiffs should use the 'tools at hand,' most prominently § 220 books and records actions, to obtain information necessary to sue derivatively.").

**37.** *Saito I*, 2001 WL 818173, at *1.

**38.** *Id.* at *5–6. Saito's access to the corporation's books and records were limited to the time period after which he became a stockholder. *Id.* at *6.

**39.** *See Saito v. McCall*, 2004 WL 3029876, at *1 (Del.Ch. Dec. 20, 2004) (dismissing most, but not all, of plaintiff's fifteen claims), *overruled in part on other grounds by Lambrecht v. O'Neal*, 3 A.3d 277 (Del.2010).

**40.** *Melzer v. CNET Networks, Inc.*, 934 A.2d 912 (Del.Ch.2007).

**41.** *Id.* at 913; *see also In re CNET Networks, Inc. S'holder Derivative Litig.*, 483 F.Supp.2d 947 (N.D.Cal.2007) ("*In re CNET Networks I* "); *In re CNET Networks, Inc. S'holder Derivative Litig.*, 2008 WL 2445200 (N.D.Cal. June 16, 2008) ("*In re CNET Networks II* ").

**42.** *In re CNET Networks I*, 483 F.Supp.2d at 949.

for failure to make a pre-suit demand on the board.[43] The California Federal Court granted the motion to dismiss, holding that the complaint failed to plead particularized facts that, if true, would show that a majority of the directors had a conflicting financial interest.[44] That dismissal was granted with leave to amend, however, and the California Federal Court suggested (as it did in this case) that the plaintiffs file a Section 220 books and records action in Delaware.[45] The plaintiffs, like King here, did that.

Granting the plaintiffs relief in their Section 220 action, the Court of Chancery found that the plaintiffs had a proper purpose for demanding inspection, because the California Federal Court had granted them leave to amend and refile their derivative complaint.[46] Thus, the plaintiffs were found to have a proper purpose for bringing a Section 220 action to inspect CNET's books and records, namely, to investigate facts needed adequately to plead demand futility in their to-be-amended California federal derivative complaint.[47]

These examples illustrate that what the California Federal Court suggested to King in this case—and what King did here—was fully consistent with Delaware case precedent. The defendants, however, point to other cases where Delaware

courts refused to allow a post-filed Section 220 action to go forward. Those cases, however, are inapposite for the reasons next discussed.

### B. Cases Where Section 220 Action Was Filed After Earlier Derivative Action Not Allowed to Proceed

The Delaware cases that reached a contrary outcome involved two sets of circumstances, neither of which is present here. In the first, the stockholder-plaintiff's plenary derivative complaint was still pending and the plenary court had not granted the plaintiff leave to amend. In the second, the plenary court had dismissed the derivative complaint with prejudice and, specifically, without leave to amend. In both circumstances, the Court of Chancery dismissed the later-filed Section 220 actions for lack of a proper purpose. Neither dismissal, however, was grounded upon the bright-line rule announced by the Court of Chancery in the case before us.

#### 1. Beiser v. PMC–Sierra

Beiser v. PMC–Sierra, Inc.,[48] implicated the first circumstance. There, the stockholder-plaintiff was the named lead plaintiff in a federal derivative action that claimed improper stock option backdating.[49] The defendants moved to dismiss the complaint under FRCP 23.1 for failure to plead demand futility.[50] The California

---

43. *Melzer*, 934 A.2d at 914; *In re CNET Networks I*, 483 F.Supp.2d at 949.

44. *Melzer*, 934 A.2d at 914–15; *In re CNET Networks I*, 483 F.Supp.2d at 954–55.

45. *Melzer*, 934 A.2d at 915. Notably, the California district judge suggested four categories of books and records that would be helpful in the California action, and issued a stay pending the books and records inspection in Delaware. *Id.; see also In re CNET Networks II*, 2008 WL 2445200, at *1, *6.

46. *Melzer*, 934 A.2d at 917–18 (concluding that investigating a corporation's admitted stock option backdating constituted a proper purpose under Section 220).

47. *See id.* at 919 ("[P]laintiffs seek access to those documents in order to plead demand futility with respect to the causes of action plaintiffs *do* have standing to bring.").

48. 2009 WL 483321 (Del.Ch. Feb. 26, 2009).

49. *Id.* at *1; *see also In re PMC–Sierra, Inc. Derivative Litig.*, 2007 WL 2427980 (N.D.Cal. Aug. 22, 2007) ("*In re PMC–Sierra I*"), *In re PMC–Sierra, Inc. Derivative Litig.*, 2008 WL 2024888 (N.D.Cal. May 8, 2008) ("*In re PMC–Sierra II*").

50. *Beiser*, 2009 WL 483321, at *1.

Federal Court's dismissal order granted the plaintiff leave to amend, and thereafter the plaintiff filed a first amended complaint.[51] The defendants moved to dismiss. Again, the California Federal Court ruled that the plaintiff had failed adequately to plead demand futility, but granted the plaintiff leave to amend "one final time."[52] The plaintiff then filed a second amended complaint in the federal derivative action. Only thereafter did he initiate a Section 220 proceeding in Delaware.[53]

At the time the plaintiff in *Beiser* filed his Delaware Section 220 action, his second amended federal derivative complaint was still pending, but the California Federal Court had not granted him leave to further amend that complaint. The Court of Chancery concluded, therefore, that the *Beiser* plaintiff lacked a proper purpose, "because the most obvious end use (to aid in filing a subsequent action) [was] no longer available."[54] The only purpose for the plaintiff's Section 220 action, the court found, was to access corporate books and records that would not have been available through discovery in the federal action.[55] Circumventing a federal discovery stay, the Court of Chancery concluded, did not constitute a proper purpose for a Section 220 action. *Beiser* is inapposite. At the time King brought his Section 220 action, the California Federal Court had granted King leave to amend his federal derivative complaint. In *Beiser*, no leave to amend had been granted, so any Section 220 inspection would have been an empty exercise.

### 2. West Coast Management Capital v. Carrier Access Corp.

*West Coast Management & Capital, LLC v. Carrier Access Corp.*[56] illustrates a second circumstance where a stockholder-plaintiff was found to lack a proper purpose for seeking Section 220 relief. There, the plaintiffs first filed a plenary derivative action in the United States District Court for the District of Colorado ("Colorado plenary court"), claiming breach of fiduciary duty in conducting illegal insider sales of corporate (Carrier) stock.[57] The defendants moved to dismiss the complaint for failure adequately to plead demand futility under FRCP 23.1.[58] In response, the plaintiffs specifically sought leave from the Colorado plenary court to replead demand futility in the event their complaint was dismissed.[59] The Colorado plenary court dismissed the complaint without prejudice, but specifically denied the plaintiffs' request for leave to amend.[60]

51. *Id.*, see also *In re PMC–Sierra I*, 2007 WL 2427980, at *5 (granting plaintiff leave to file an amended complaint).

52. *In re PMC–Sierra II*, 2008 WL 2024888, at *3.

53. *Beiser*, 2009 WL 483321, at *2 (noting that the plaintiff had filed his second amended complaint *before* prosecuting his Section 220 action).

54. *Id.* at *3.

55. In *Beiser*, the federal district judge held that the PSLRA applied to the plaintiff's derivative complaint, and thus, discovery in the federal action was stayed once the defendant-corporation filed a motion to dismiss. *Id.*

56. 914 A.2d 636 (Del.Ch.2006).

57. *Id.* at 639; see also *Kenney v. Koenig*, 426 F.Supp.2d 1175, 1179–80 (D.Colo.2006).

58. *West Coast*, 914 A.2d at 639; see also *Kenney*, 426 F.Supp.2d at 1180.

59. *Kenney*, 426 F.Supp.2d at 1187–88 ("Plaintiffs ask that the Court "dismiss this action without prejudice and with leave to amend so that Plaintiffs can attempt to cure any perceived pleading deficiencies" in the event the Court finds that plaintiffs have not sufficiently demonstrated demand futility.").

60. *Kenney*, 426 F.Supp.2d at 1188 ("The Court finds no basis for allowing plaintiffs to amend their complaint.").

Thereafter, the plaintiffs brought a Section 220 action in Delaware seeking to inspect the corporation's (Carrier's) books and records. Denying relief, the Court of Chancery held that the plaintiffs lacked a proper purpose, because it was "clear that [the plaintiffs'] sole purpose for investigating claims of wrongdoing [was] to obtain additional information to replead demand futility in order to pursue a second derivative suit." [61] Because the Colorado plenary court had dismissed the complaint without leave to amend, the plaintiffs were found estopped from relitigating demand futility in the plenary derivative action.[62] As thus precluded, the plaintiffs lacked a proper purpose under Section 220.[63] Like *Beiser, West Coast* is inapposite, because in this case, King was specifically granted leave to amend his dismissed complaint.

## II. Under Delaware Precedent King Had A Proper Purpose

*Disney, McKesson HBOC,* and *Melzer* make it clear that Delaware case law does not support the Court of Chancery's conclusion that King lacked a proper purpose for bringing a Section 220 action solely because he first "elected" to file a derivative suit in the California Federal Court. To reiterate, the California Federal Court dismissed King's derivative complaint without prejudice and with leave to amend. In response to that court's suggestion, King then sought a Section 220 inspection of VeriFone's books and records to aid him in pleading demand futility in a to-be-

amended derivative complaint. Under Delaware case law, that was a proper purpose under Section 220.[64]

The result we reach here reaffirms long-standing Delaware precedent which recognizes that it is a proper purpose under Section 220 to inspect books and records that would aid the plaintiff in pleading demand futility in a to-be-amended complaint in a plenary derivative action, where the earlier-filed plenary complaint was dismissed on demand futility-related grounds without prejudice and with leave to amend. That holding should not be read as an endorsement by this Court of proceeding in that way. We caution that filing a plenary derivative action without having first resorted to the inspection process afforded by 8 *Del. C.* § 220 may well prove imprudent and cost-ineffective. But, absent some other, sufficient ground for dismissal, that sequence is not fatal to the prosecution of a Section 220 action.

## III. The Rule Adopted By The Court of Chancery Is Inconsistent With Section 220's Underlying Policy

Although we reject the result reached by the Court of Chancery, and the bright-line rule that drove it, we are sensitive to the policy concerns that animated both. We agree with the Vice Chancellor that it is wasteful of the court's and the litigants' resources to have a regime that could require a corporation to litigate repeatedly the issue of demand futility. Undoubtedly the preclusion rule adopted by the Court

---

**61.** *West Coast,* 914 A.2d at 645–46.

**62.** *Id.* at 643–44; *see also id.* at 646 ("Thus, the language of the [Colorado plenary court's] opinion and the decision to deny leave to replead support the conclusion that the without prejudice order was not intended to permit West Coast to relitigate its claim.").

**63.** *Id.* at 638, 645–46.

**64.** *See Melzer v. CNET Networks, Inc.,* 934 A.2d 912, 917–19 (Del.Ch.2007) (holding that

plaintiffs wishing to inspect books and records for purposes of pleading demand futility in an amended derivative complaint had a proper purpose); *see also Brehm v. Eisner,* 746 A.2d 244, 266–67 (Del.2000) (suggesting that plaintiffs use Section 220 to develop facts needed to adequately plead demand futility in an amended derivative complaint); *Ash v. McCall,* 2000 WL 1370341, at *16 (Del.Ch. Sept. 15, 2000) (same).

of Chancery was intended as a needed prophylactic cure. In our view, however, a rule that would automatically bar a stockholder-plaintiff from bringing a Section 220 action *solely* because that plaintiff previously filed a plenary derivative suit, is a remedy that is overbroad and unsupported by the text of, and the policy underlying, Section 220. If relief under Section 220 is to be restricted in the manner adjudicated by the Court of Chancery, any such restriction should be imposed expressly by the General Assembly, not decreed by judicial common law decision-making.

To the extent that the premature filing of a plenary derivative action may be a potential abuse, narrower remedies are available. If, as the Court of Chancery indicated, the premature filing of a derivative action is motivated by a "rush[ ] to the courthouse" to position the plaintiff to be named "lead plaintiff," appropriate reme-

dies are available in the plenary court. Being the "first to file" does not automatically confer lead-plaintiff status.[65] Both Delaware and federal courts generally consider various factors when selecting lead plaintiff (and lead counsel), the goal being to appoint the representative who will best serve the interests of the corporation and its shareholders and most effectively prosecute the litigation.[66] One possible remedy for a prematurely-filed derivative action might be for the plenary court to deny the plaintiff "lead plaintiff" status in such circumstances.

Another (although more drastic) remedy for a derivative complaint brought prematurely and without prior investigation of facts that would excuse a pre-suit demand, would be for the plenary court to dismiss the derivative complaint with prejudice and without leave to amend as to the named plaintiff.[67] A third possible remedy

65. *See, e.g., In re Topps Co. S'holders Litig.,* 924 A.2d 951, 957 (Del.Ch.2007) (explaining that being the first to file has "no substantial weight in determining who should be lead counsel in a representative action."); *Doyle v. Rich,* 1978 WL 22021, at *1 (Del.Ch. June 21, 1978) ("[A]lthough the Doyle action was file first, I agree with counsel for Okun that a determination as to lead counsel in an action brought for the benefit of others should not be controlled by the winner of a race to the courthouse.").

66. *See, e.g., Dutiel v. Tween Brands, Inc.,* 2009 WL 3208287, at *1 (Del.Ch. Oct. 2, 2009) (noting at least three factors for consideration in naming lead plaintiff: (1) the quality of each plaintiff's pleading, (2) plaintiff's economic stake in the lawsuit's outcome; and (3) vigorousness of prosecution); *Hirt v. U.S. Timberlands Serv. Co.,* 2002 WL 1558342, at *2 (Del.Ch. July 9, 2002) (listing six factors for consideration). Federal courts follow a similar approach. *See, e.g., Larson v. Dumke,* 900 F.2d 1363, 1367 (9th Cir.1990) (listing eight factors to consider in evaluating the adequacy of a class representative in a derivative action); *In re Foundry Networks, Inc. Derivative Litig.,* 2007 WL 485974, at *1 (N.D.Cal. Feb. 12, 2007) (considering each

plaintiff's financial stake in the corporation and quality of their respective pleadings); *Millman v. Brinkley,* 2004 WL 2284505, at *3 (N.D.Ga. Oct. 1, 2004) (appointing lead plaintiffs on the basis of: (1) continuous ownership of stock by the selected plaintiffs; (2) failure to file a verified complaint by another applicant for lead plaintiff; and (3) the strength of their lawyers' pleadings); *Dollens v. Zionts,* 2001 WL 1543524, at *5–6 (N.D.Ill. Dec. 4, 2001) (evaluating the plaintiff's financial stake in the defendant-corporation, status as institutional investors, quality of pleadings, and vigorousness of prosecution).

67. *See Kenney v. Koenig,* 426 F.Supp.2d 1175, 1187–88 (D.Colo.2006) (denying plaintiff's request to dismiss without prejudice and with leave to amend); *see also West Coast Mgmt. & Capital LLC v. Carrier Access Corp.,* 914 A.2d 636 (Del.Ch.2006) (holding that plaintiff lacked a proper purpose for bringing a Section 220 action because the federal judge in *Kenney* had denied plaintiff's request to replead demand futility in an amended complaint).

If (counterfactually) King had brought his Section 220 action after the California Federal Court dismissed his second amended derivative complaint with prejudice and without

would be for the plenary court to grant leave to amend one time, conditioned on the plaintiff paying the defendants' attorneys' fees incurred on the initial motion to dismiss. These possibilities are intended only as illustrative. The point we make is that such remedies are for the plenary court to fashion and impose in the plenary action. For the Court of Chancery in a Section 220 proceeding to establish and impose a preclusive judge-made rule that

finds no support either in the language or its underlying policy of Section 220, or in Delaware case law, was error.

## CONCLUSION

For the reasons stated above, the judgment of the Court of Chancery is reversed.

leave to amend, he would lack a proper purpose under Section 220. King, however, brought his Section 220 action after he had been granted leave to amend his plenary derivative complaint. The California Federal Court's dismissal of King's second amended derivative complaint with prejudice and with-

out leave to amend occurred after the Court of Chancery issued its opinion dismissing King's Section 220 action, and while this case was pending appeal. *See In re VeriFone II*, 2010 WL 3385055 (N.D.Cal. Aug. 26, 2010).