# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CHC INVESTMENTS, LLC,

    Plaintiff,

    v.

FIRSTSUN CAPITAL BANCORP,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2018-0610-KSJM

## MEMORANDUM OPINION

Date Submitted: December 13, 2018
Date Decided: January 24, 2019

James D. Taylor, Jr. of SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, Delaware, and OF COUNSEL, Michael C. Manning, Jeffrey J. Goulder, Stefan M. Palys, and Christy M. Milliken of STINSON LEONARD STREET LLP, Phoenix, Arizona, *Attorneys for Plaintiff CHC Investments, LLC*

Jon E. Abramczyk, William M. Lafferty, and Sabrina M. Hendershot of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, and OF COUNSEL, Lawrence Portnoy and Julia Kiechel of DAVIS POLK & WARDWELL LLP, New York, New York, *Attorneys for Defendant FirstSun Capital Bancorp*

McCORMICK, V.C.

Plaintiff, CHC Investments, LLC ("CHC"), filed this action pursuant to Section 220 of the Delaware General Corporation Law to inspect the books and records of FirstSun Capital Bancorp ("FirstSun"). Before demanding inspection, CHC filed plenary claims in this Court against FirstSun (the "Plenary Action"). CHC's sole basis for demanding inspection is to investigate the claims asserted in the Plenary Action. Consistent with this Court's holdings in *King v. Verifone*,[1] *Central Laborers Pension Fund v. News Corporation*,[2] and *Amalgamated Bank v. NetApp, Inc.*,[3] this decision finds that CHC's pending Plenary Action renders CHC's purpose for inspecting records improper, and therefore grants FirstSun's Motion to Dismiss.

## I. BACKGROUND

The facts are drawn from CHC's complaint and the documents it incorporates by reference, including the complaint filed in the Plenary Action.

CHC has held shares in Strategic Growth Bancorp, Inc. ("SG Bancorp"), which merged into FirstSun in 2017, since at least April 5, 2013.[4] In March 2014,

---

[1] 12 A.3d 1140 (Del. 2011).

[2] 2011 WL 6224538 (Del. Ch. Nov. 30, 2011) [hereinafter "*News Corp. I*"], *aff'd on other grounds Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 140-41 (Del. 2012) [hereinafter "*News Corp. II*"].

[3] 2012 WL 379908 (Del. Ch. Feb. 6, 2012).

[4] *See* C.A. No. 2018-0610-KSJM Docket ("Dkt.") 1, Pl.'s Verified Complaint Pursuant to 8 *Del. C.* § 220 ("220 Compl.") ¶ 7.

1

CHC purchased approximately $25 million in additional SG Bancorp securities through a private placement (the "Private Placement").[5] SG Bancorp solicited this investment to fund the build-out of SG Bancorp's national mortgage platform and real estate investment trust operations.[6] At the time of the Private Placement, two high-ranking SG Bancorp employees were defending two securities fraud class actions and a lawsuit by the Federal Housing Finance Agency.[7] These lawsuits concerned the offer and sale of residential mortgage backed securities and resulted in "nine- and ten-figure settlements."[8] CHC alleges that it first learned of the lawsuits in December 2014.[9]

Although the stated purpose of the Private Placement was to grow the SG Bancorp mortgage unit,[10] within months of the Private Placement, SG Bancorp announced its intention to spin off that unit.[11] To consummate the spin-off, SG Bancorp launched an exchange offer (the "Exchange Offer").[12] Through the Exchange Offer, SG Bancorp common stockholders were offered up to 85% of the

---

[5] *Id.* ¶ 16.

[6] *Id.* ¶ 14.

[7] *Id.*

[8] *Id.*

[9] C.A. No. 2018-0353-KSJM Dkt. 1, Pl.'s Verified Complaint for Breach of Fiduciary Duty ("Plenary Compl.") ¶¶ 56, 57.

[10] 220 Compl. ¶ 14

[11] *Id.* ¶ 16.

[12] *Id.* ¶ 17.

nonvoting preferred stock and 35% of the common stock of a new holding company.[13]  Management retained the remaining 65% of the common stock.[14]  CHC declined to participate in the Exchange Offer.[15]

On May 18, 2015, SG Bancorp released financial statements.[16]  CHC alleges that those statements revealed for "the first time"[17] information that was concealed from CHC and SG Bancorp's stockholders.[18]  Around June 2017, SG Bancorp and its affiliate, Strategic Growth Bank Incorporated, merged with FirstSun.[19]

On May 17, 2018, CHC commenced the Plenary Action in this Court against FirstSun and certain former directors, officers, and stockholders of SG Bancorp.[20] CHC alleges that SG Bancorp's disclosures regarding the Private Placement and Exchange Offer contained material misrepresentations or omissions about SG Bancorp's mortgage business.[21]  In the Plenary Action, CHC asserts claims of breach of fiduciary duty, fraud, inadequate disclosure, and related causes of action,

---

[13] *Id.*

[14] *Id.* ¶ 18.

[15] *Id.*

[16] Plenary Compl. ¶ 78.

[17] *Id.* ¶ 80.

[18] *Id.* ¶¶ 80-82.

[19] 220 Compl. ¶ 8.

[20] Plenary Compl. ¶¶ 21-35.

[21] *Id.* ¶ 5.

3

and seeks damages, rescission, and costs and attorneys' fees.[22] CHC asserts these claims directly and not in a representative capacity. CHC's Section 220 Complaint expressly incorporates the complaint files in its Plenary Action.[23]

After commencing the Plenary Action, CHC served FirstSun with a demand pursuant to 8 *Del. C.* § 220 to inspect books and records of FirstSun, SG Bancorp, and Strategic Growth Bank Incorporated (the "Demand").[24]

The Demand's stated purpose for inspection is to "investigate the facts behind . . . [SG Bancorp's] incomplete disclosures, corporate mismanagement in association with the split-off of its operation into [a] separate Delaware limited liability company . . . , and improprieties underlying the terms of the . . . Exchange Offer . . . ."[25] The Demand seeks twenty-one categories of documents.[26]

FirstSun responded to the Demand on July 13, 2018 denying inspection in light of the pending Plenary Action.[27] CHC commenced this action on August 17, 2018.[28] FirstSun moved to dismiss the Section 220 Complaint on September 12,

---

[22] Plenary Compl. ¶¶ 86-153 & p.38.

[23] 220 Compl. ¶ 21.

[24] 220 Compl. Ex. A.

[25] *Id*. at 2.

[26] *Id*. at 3-4.

[27] 220 Compl. ¶ 24.

[28] C.A. No. 2018-0610-KSJM Dkt. 1.

2018.[29]   The parties completed briefing on FirstSun's motion to dismiss on November 16, 2018,[30] and the Court heard oral argument on December 13, 2018.[31]

## II.   ANALYSIS

To determine whether the Section 220 Complaint states a claim, the Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor."[32]   The Court will grant a motion to dismiss under Court of Chancery Rule 12(b)(6) only if the "plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[33]

To be entitled to inspect books and records under Section 220, a stockholder must state a proper purpose for inspection.[34]   FirstSun contends as its primary argument in support of dismissal that CHC fails to state a proper purpose.   CHC admits that the categories of documents it seeks are "all designed to give Plaintiff the information necessary to investigate the claims" asserted in the Plenary Action.[35]

---

[29] C.A. No. 2018-0610-KSJM Dkt. 8.

[30] C.A. No. 2018-0610-KSJM Dkt. 8 ("Def.'s Op. Br."), Dkt. 22 ("Pl.'s Ans. Br."), Dkt. 26 ("Def.'s Reply Br.").

[31] C.A. No. 2018-0610-KSJM Dkt. 40.

[32] *Norton v. K-Sea Transp. P'rs L.P.*, 67 A.3d 354, 360 (Del. 2013).

[33] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[34] 8 *Del. C.* § 220(c)(3).

[35] 220 Compl. ¶ 23 at p.9.

5

FirstSun argues, as a matter of law, that investigating claims asserted in a pending plenary action is not a proper purpose under Section 220.

Seeking inspection under Section 220 to investigate pending claims—the "sue first, ask questions later"[36] approach—is problematic for a number of reasons. First, the plenary and Section 220 complaints are inherently contradictory.[37] On the one

---

[36] Bruce E. Jameson, *Sue First, Ask Questions Later: Can a Derivative Plaintiff Seek to Inspect Books and Records After Filing Its Derivative Claims?*, Bus. L. Today, 1-3 (June 2012); *Doe v. Cahill*, 884 A.2d 451, 457 (Del. 2005) (first Delaware opinion using the phrase "sue first, ask questions later," albeit in the distinguishable context of efforts to unmask an anonymous author of allegedly defamatory internet content).

[37] *See Schnatter v. Papa John's Int'l*, 2019 WL 194634, at *11 (Del. Ch. Jan. 15, 2019) ("Delaware courts have recognized that a stockholder who files a plenary action asserting claims of mismanagement undercuts his alleged need to obtain documents under Section 220 to investigate the same alleged acts of mismanagement."); *Bizzari v. Suburban Waste Servs., Inc.*, 2016 WL 4540292, at *6 (Del. Ch. Aug. 30, 2016) (observing that the stockholder plaintiff "effectively conceded that the books and records he seeks are not necessary or essential to his stated purpose of investigating mismanagement or wrongdoing with respect to the [issues raised in the plenary action]" because the stockholder "presumably concluded they possessed sufficient information under Rule 11 to file the complaint without first inspecting books and records"); *News Corp. I*, 2011 WL 6224538, at *2 (finding no proper purpose where plaintiff had a currently-pending action that "necessarily reflect[ed] its view that it had sufficient grounds" for its allegations "without the need for the assistance afforded by Section 220"), *aff'd on other grounds, News Corp. II*, 45 A.3d 139; *Baca v. Insight Enters., Inc.*, 2010 WL 2219715, at *4 (Del. Ch. June 3, 2010) ("[T]he stockholder who serves a post-plenary-action Section 220 demand contradicts his own certification that he already possessed sufficient information to file a complaint."); *Taubenfeld v. Marriott Int'l, Inc.*, 2003 WL 22682323, at *3 (Del. Ch. Oct. 28, 2003) (noting that filing a derivative complaint "was a certification under Rule 11 that the plaintiffs had enough information to support their allegations"); *Parfi Hldg., AB v. Mirror Image Internet, Inc.*, C.A. No. 18457, at 6 (Del. Ch. Mar. 23, 2001) (TRANSCRIPT) (observing that "[b]y filing [the] plenary action, the plaintiff in the 220 case has already necessarily conceded that they had enough information to file allegations of mismanagement in a complaint with good faith and for its counsel to have satisfied the necessary pleading standards").

6

hand, by commencing plenary litigation a plaintiff represents that it has sufficient information to support its allegations.[38]  On the other hand, to inspect books and records under Section 220 to support its plenary claims, a stockholder must represent that the information is necessary to its plenary claims.[39]  Second, once a stockholder commences plenary litigation, discovery rules dictate what information relevant to its claims the stockholder may receive and when the stockholder may receive that information.  Using Section 220 inspections to investigate pending plenary claims undermines well-established discovery law.[40]

---

[38] *See* Ct. Ch. R. 11(b)(3) (providing that, by filing a pleading, a party "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the allegations and other factual contentions have evidentiary support").

[39] *See generally Sec. First Corp. v. U.S. Die Casting and Dev. Co.*, 687 A.2d 563, 569 (Del. 1997) (holding that a Section 220 plaintiff must demonstrate that each category of books and records requested is "essential to the accomplishment of the stockholder's articulated purpose for the inspection"); Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 9.07[e][4], at 9-155 to -159 (2018).

This "essential to the accomplishment" requirement pertains to stockholder inspection demands only.  In contrast, "a director is not limited to information that is necessary and essential to a proper purpose.  A director's right of access is 'essentially unfettered in nature,'" and a limited liability company manager's inspection rights are equally broad absent contractual limitations. *Obeid v. Gemini Real Estate Advs., LLC*, 2018 WL 2714784, at *4 (Del. Ch. June 5, 2018) (ORDER) (citations omitted) (enforcing LLC manager inspection rights), *aff'd* 2019 WL 181195 (Del. Jan. 14, 2019) (ORDER); *see also Schnatter*, 2019 WL 194634 (enforcing director's inspection rights).

[40] *See Lavin v. W. Corp.*, 2017 WL 6728702, at *10 n.82 (Del. Ch. Dec. 29, 2017) (observing that if plaintiff had filed the 220 action after he brought his plenary action, the plaintiff would "lack the fruits of his Section 220 yield" and "likely would be deemed to have improperly employed Section 220 as a substitute for discovery"); *News Corp. I*, 2011 WL 6224538, at *1 ("Section 220 was not adopted as a substitute for litigation discovery

Despite problems inherent in the "sue first, ask questions later" sequence, in "special circumstances," Delaware courts have enforced a stockholder's Section 220 rights notwithstanding the stockholder's pending plenary complaint.[41] In opposition to FirstSun's dismissal argument, CHC relies on two cases framing special circumstances in which Delaware courts will permit this approach: *Khanna v. Covad Communications Group, Inc.*[42] and *King v. VeriFone*.[43]

In *Khanna*, a stockholder plaintiff filed substantive derivative claims while his Section 220 action was pending out of a concern that his substantive claims

---

. . . ."); *Bizzari*, 2016 WL 4540292, at *6 ("The availability of discovery in the Plenary Action undercuts [the plaintiff's] alleged need to investigate mismanagement through an inspection demand."); *Pinsly v. Bank of Am. Corp.*, C.A. No. 7943-ML, at 66 (Del. Ch. Dec. 20, 2012) (TRANSCRIPT) (denying stockholder inspection where the request was "the functional equivalent of cases in which [the Court of Chancery] has denied books and records requests that try to make an end-run around stays of discovery"); *Highland Select Equity Fund, L.P. v. Motient Corp.*, 906 A.2d 156, 165 (Del. Ch. Jul. 6, 2006) ("Section 220 is . . . not a way to circumvent discovery proceedings, and is certainly not meant to be a forum for the kinds of wide-ranging document requests permissible under Rule 34."), *aff'd sub nom. Highland Equity Fund, L.P. v. Motient Corp.*, 922 A.2d 415 (Del. 2007) (ORDER); *Khanna v. Covad Commc'ns Gp., Inc.*, 2004 WL 187274, at *9 (Del. Ch. Jan. 23, 2004) ("A Section 220 action is not a substitute for discovery under the rules of civil procedure.").

There are other problems with permitting this sequence unique to derivative and representative suits (*see Baca*, 2010 WL 2219715, at *4), but derivative and representative suits also involve unique countervailing policy considerations (*see infra* pp. 12-13 and *King*, 12 A.3d at 1150-51).

[41] *See News Corp. I*, 2011 WL 6224538, at *1 (describing the circumstances in which Delaware courts will permit simultaneous pursuit of a books and records action and the related plenary action as "special circumstances"); *Baca*, 2010 WL 2219715, at *6 (same).

[42] 2004 WL 187274.

[43] 12 A.3d 1140.

would become time barred.[44] The defendant argued that by commencing the derivative litigation, the plaintiff waived his right to pursue the Section 220 claims.[45] This Court rejected the defendant's argument, which "overlook[ed] the simple reality that the overlap of the Section 220 action and the Derivative Action is attributable to [the defendant's] failure to comply with its obligations under Section 220 . . . ."[46]

CHC interprets *Khanna* broadly to mean that when a stockholder faces statute of limitations or laches pressures, regardless of the cause of those pressures, the stockholder may pursue its plenary claims while seeking to investigate those claims under Section 220. As described above, the ruling of *Khanna* is not so broad. Rather, *Khanna* is limited to circumstances in which timing pressures are caused by the defendant, or, at least, not caused by the plaintiff.

The circumstances at issue in *Khanna* are not present here. CHC alleges no facts suggesting that FirstSun is at fault for the timing of this action.[47]

---

[44] 2004 WL 187274, at *3.

[45] *Id.* at *4.

[46] *Id.*; *see also id.* ("By failing to produce timely the requested documents, [the defendant] created the conditions about which it now complains."). *Accord Romero v. Career Educ. Corp.*, 2005 WL 3112001, at *2 (Del. Ch. Nov. 4, 2005) ("When the overlap in suits results from a defendant's failure to comply with its § 220 obligations, the filing of a derivative complaint will not make an otherwise proper purpose improper.").

[47] FirstSun faults CHC for the timing of this action. FirstSun argues that CHC had inquiry notice of the alleged wrongdoing on May 18, 2015 at the latest, the claims asserted in the Plenary Action are therefore time barred, and thus CHC lacks a proper purpose to investigate such claims. This decision does not evaluate that argument, or FirstSun's

*King* is likewise inapposite. In *King*, the Delaware Supreme Court enforced a stockholder's inspection demand to investigate prior-filed plenary claims where a California federal court dismissed the plenary claims with leave to re-plead.[48] In dismissing the claims, the California court expressly encouraged the plaintiff to demand inspection in order to meet the onerous pleading requirements applicable to derivative claims.[49]

CHC interprets *King* broadly to permit a plaintiff that has filed a plenary action to pursue a Section 220 inspection where the plaintiff has the opportunity to amend the plenary complaint.[50] By contrast, FirstSun interprets *King* to prevent a plaintiff that has filed a plenary action from pursuing a Section 220 inspection unless the plenary complaint has been dismissed without prejudice and with leave to amend.[51] CHC's interpretation focuses on the opportunity to amend. FirstSun's interpretation focuses on prior judicial action.[52]

---

argument that a general release bars CHC's plenary claims, which are best addressed in the Plenary Action. *See generally Amalgamated Bank v. UICI*, 2005 WL 1377432, at \*2 (Del. Ch. June 2, 2005) (observing that evaluating the merits in a Section 220 action of affirmative defenses to plenary claims, in some circumstances, is inconsistent with Section 220's summary nature).

[48] 12 A.3d at 1150.

[49] *Id.* at 1143.

[50] Pl.'s Ans. Br. at 11.

[51] Def.'s Op. Br. at 9; Def.'s Reply Br. at 5.

[52] The parties to this case are not the first to dispute the meaning of *King*. *See, e.g.*, *Bizzari*, 2016 WL 4540292, at \*6 (citing *King* in the context of a director's inspection demand, denying director's request to inspect records for the purpose of investigating

FirstSun's interpretation finds support in two decisions of this Court directly addressing the issue. In *News Corp. I*, this Court dismissed a Section 220 claim for lack of a proper purpose in light of a prior-filed plenary action.[53] The Court observed that "no judicial action ha[d] occurred that would suggest a need or reason for further pleadings or efforts to gather important facts to support a cognizable purpose for an inspection . . . ."[54] Similarly, in *NetApp*, this Court held that a *"right to seek to amend"* standing alone, does not create a proper purpose for inspection.[55] Rather, this Court emphasized that to have a proper purpose for Section 220 inspection, the court considering the plenary claims must have taken action—i.e., *"granted leave to amend."*[56]

---

mismanagement in light of pending plenary litigation); *Bodner v. IHS Long Term Care Inc.*, C.A. No. 7021-ML, Draft Rep. 14-15, 18 (Del. Ch. Jul. 9, 2012) (addressing *King* in the context of a director's inspection demand, denying motion to dismiss Section 220 action; parties settled before Draft Report finalized); *NetApp*, 2012 WL 379908, at *7 (addressing *King* in the context of a stockholder's motion to compel relief granted under Section 220, finding that the stockholder's pending plenary complaint mooted proper purpose); *News Corp. I*, 2011 WL 6224538 (addressing *King* in the context of a stockholder's inspection demand, granting motion to dismiss Section 220 action in light of pending plenary claim), *aff'd*, 45 A.3d at 140-41 (acknowledging the *King* issue but affirming the Court of Chancery's decision on other grounds). *See also Klein v. Walton*, C.A. No. 7455-CS, at 32-34 (Del. Ch. Jul. 16, 2012) (TRANSCRIPT) (observing post-*King* uncertainty on the circumstances in which a party may inspect books and records in aid of a pending plenary complaint).

[53] *News Corp. I*, 2011 WL 6224538, at *2.

[54] *Id.* at *1.

[55] *NetApp*, 2012 WL 379908, at *7 (emphasis in original).

[56] *Id.* (emphasis in original). *See also Bizzari*, 2016 WL 4540292, at *6 n.45 (citing *King* for the proposition that "dismissal of an inspection action is proper when the stockholder's

11

FirstSun's interpretation of *King* mitigates the two problems that otherwise arise when Section 220 actions proceed while plenary claims are pending. After a court has deemed the plenary complaint insufficient and permitted a stockholder to re-plead or amend, the stockholder is not taking the inherently inconsistent positions of standing by its pleadings while simultaneously averring a need for information to support those pleadings. After a court has deemed the plenary complaint insufficient and permitted a stockholder to re-plead or amend, the stockholder is not impermissibly evading well-established discovery rules by seeking inspection.[57]

Consistent with *News Corp. I* and *NetApp*, I construe *King* narrowly and find that its exception does not apply unless a court has deemed the plenary complaint insufficient and permitted a stockholder to re-plead or amend. At this stage, no judicial action has occurred in the Plenary Action. The exception of *King*, therefore, does not apply.

Further, *Khanna* and *King* are distinguishable because both involved derivative claims that import policy considerations not implicated by CHC's plenary

---

plenary complaint is still pending and *the court in which the plenary action was filed has not granted leave to amend*") (emphasis added).

[57] Interpreting *King* as focused on prior judicial action is also consistent with principles of comity. Special circumstances for deviating from the recommended sequence exists where, as in *King*, a judge of a sister state instructs a stockholder to pursue a Section 220 inspection to bolster its pleadings. *See King*, 12 A.3d at 1143 (citation omitted) ("In granting leave to amend the complaint, the California Federal Court suggested that King first 'engage in further investigation to assert additional particularized facts' by filing a Section 220 action in Delaware.").

claims. Delaware policy encourages stockholders in the derivative and representative context to use the "'tools at hand' (*e.g.*, Section 220) to gather information before filing complaints that will be subject to heightened pleading standards."[58] Also, because meritorious derivative and representative claims "further[] the interest of all stockholders and . . . increase [the] stockholder return,"[59] there are greater incentives to seek to preserve such claims. In evaluating the conduct of plaintiffs seeking to use the "tools at hand" to pursue derivative and representative claims, *King* reflects the Delaware Supreme Court's view that these policies favor some measure of leniency in certain circumstances.[60] No such policy warrants a lenient approach to CHC's Section 220 action.

In sum, although there is no bright-line rule prohibiting stockholders from using Section 220 to investigate pending plenary claims, Delaware courts have enforced those inspection demands in special circumstances only. None of those circumstances are present here.

---

[58] *Lavin*, 2017 WL 6728702, at *9 (enforcing a Section 220 demand to permit a plaintiff to gather information for the purpose of filing a claim subject to *Corwin v. KKR Fin. Hldgs. LLC*, 125 A.3d 304 (Del. 2015)). *See also Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 120 (Del. 2006) (citation omitted) ("The rise in books and records litigation is directly attributable to this Court's encouragement of stockholders, who can show a proper purpose, to use the 'tools at hand' to obtain the necessary information before filing a derivative action.").

[59] *Seinfeld*, 909 A.2d at 121.

[60] Even in the context of derivative and representative suits, the sue-first sequence is "ill-advised," *King*, 12 A.3d at 1146, and should be seldom permitted.

Because CHC alleges no special circumstances, the problems inherent in parallel plenary and Section 220 actions defeat CHC's purpose for inspection. By commencing the Plenary Action, CHC represented that it had all facts necessary to support the plenary claims, and thus CHC lacks a proper purpose to inspect FirstSun's books and records.[61] CHC's purpose is also improper because, having asserted the Plenary Action, CHC's corresponding information rights are governed by a well-established framework of rules and precedent concerning discovery.[62] CHC cannot invoke Section 220 to sidestep that framework.

CHC's failure to state a proper purpose leaves no reasonably conceivable set of facts on which CHC is entitled to relief, and dismissal is therefore appropriate.

## III. CONCLUSION

For the foregoing reasons, FirstSun's Motion to Dismiss the Section 220 Complaint is GRANTED.

**IT IS SO ORDERED.**

---

[61] *See supra* notes 37-38.

[62] *See supra* note 40.