**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: December 4, 2025
Date Decided: December 19, 2025

Gregory V. Varallo, Esquire
Mae Oberste, Esquire
Bernstein Litowitz Berger &
Grossmann LLP
500 Delaware Avenue, Suite 901
Wilmington, DE 19801

Douglas D. Herrmann, Esquire
Cassandra L. Thompson, Esquire
Troutman Pepper Locke LLP
1313 Market Street, PO Box 1709
Wilmington, DE 19899

RE:  *Michael O'Neill v. Summit Materials, Inc.*,
C.A. No. 2025-0695-LM (BWD)

Dear Counsel:

This letter opinion resolves exceptions to a Magistrate in Chancery's post-trial oral ruling in a books and records action.  In her ruling, the Magistrate Judge concluded that the stockholder plaintiff lacks a proper purpose to inspect books and records because he already filed a plenary action challenging the same purported wrongdoing that he seeks to investigate through his demand.  For reasons that follow, the plaintiff's exceptions are denied and the Magistrate Judge's final report denying inspection is adopted.

## I.      BACKGROUND

The following facts are drawn from the Magistrate in Chancery's October 1, 2025 post-trial oral final report (the "Final Report") and the record developed at a September 23, 2025 trial.[1]

Prior to February 2025, plaintiff Michael O'Neill ("Plaintiff") was a stockholder of Summit Materials, Inc. ("Summit"), a Delaware corporation that produces and supplies aggregates, cement, ready-mix concrete, asphalt paving mix, and concrete products; and owns and operates quarries, sand and gravel pits, six cement plants, cement distribution terminals, ready-mix concrete plants, asphalt plants, and landfill sites.  JX 12 at 2; Pl.'s Opening Br. in Supp. of His Exceptions to the Magistrate's Final Report [hereinafter OB] at 8, Dkt. 35.

In January 2024, Summit combined with Argos North America Corp.  JX 3 at 1.  In that transaction, nonparty Grupo Argos S.A. ("Grupo Argos"), a Colombian entity, received $1.2 billion in cash and approximately 54.7 million shares of Summit common stock, representing roughly 31% of the combined entity.  JX 4 at 2, 8.  At that time, Summit and Grupo Argos entered into a stockholder agreement

---

[1] Tr. of 10-1-2025 Telephonic Report of the Magistrate on Pl.'s Request for Inspection of Books and Rs. [hereinafter Final Report], Dkt. 34.  Joint exhibits are cited as "JX __" unless otherwise defined.

under which Grupo Argos obtained certain consent rights and was entitled to nominate three directors to Summit's eleven-member board of directors. JX 2 at 4, 14. Summit and Grupo Argos also entered into a restrictive covenant agreement that prohibited Grupo Argos from competing with Summit within the United States and parts of Canada for a period of five years (the "Non-Compete"). JX 1 at 2–3.

Less than a year later, on November 24, Summit and nonparty Quikrete Holdings, Inc. ("Quikrete") entered into a merger agreement under which Quikrete agreed to acquire Summit in an all-cash merger for $52.50 per share of Summit common stock (the "Merger"). Final Report at 4; JX 10 at 2. Grupo Argos agreed to support the Merger in exchange for Quikrete's agreement that Summit would waive the Non-Compete. Final Report at 4; JX 10 at 45–46, 51.

On January 14, 2025, Plaintiff served a books and records demand on Summit's board of directors pursuant to 8 *Del. C.* § 220 ("Section 220") to investigate possible wrongdoing in connection with the Merger (the "Demand"). Final Report at 4; JX 12 at 1. On January 29, Plaintiff and Summit entered into a Books and Records Access Agreement (the "Standing Agreement") to preserve Plaintiff's standing to seek books and records after the Merger closing. JX 15 at 1. The Merger closed on February 10. JX 17 at 1.

On February 17, Delaware legislators introduced Senate Bill 21 ("S.B. 21")

in the Delaware General Assembly, proposing amendments to Sections 144 and 220

of the Delaware General Corporation Law. Del. S.B. 21, 153d Gen. Assem. (2025)

[hereinafter S.B. 21], *available at* https://legis.delaware.gov/BillDetail/141857. The

amendments to Section 144 define a "[c]ontrolling stockholder" to include a person

that, together with such person's affiliates and associates,

> [h]as the power functionally equivalent to that of a stockholder that
> owns or controls a majority in voting power of the outstanding stock of
> the corporation entitled to vote generally in the election of directors by
> virtue of ownership or control of at least one-third in voting power of
> the outstanding stock of the corporation entitled to vote generally in the
> election of directors.

S.B. 21 § 144(e)(2)(b); *see also* 8 *Del. C.* § 144(e)(2)(c).

On February 25 (eight days after S.B. 21 was introduced), Plaintiff initiated a

plenary action in this Court, alleging claims for breach of fiduciary duty in

connection with the Merger (the "Plenary Action"). JX 20 at 1, 26–28; *see* Verified

Class Action Compl., C.A. No. 2025-0209-MTZ, Dkt. 1. Plaintiff filed that action

hoping to outrun the effect of the new legislation. But on March 12, Delaware

legislators introduced Senate Substitute 1 for S.B. 21 in the Delaware General

Assembly, which made clear that the amendments would have retroactive effect for

proceedings commenced after February 17, *i.e.*, the day that S.B. 21 was first

introduced. Del. S. Sub. 1 for S.B. 21, 153d Gen. Assem. (2025), codified at 8 *Del. C.* §§ 144, 220, *available at* https://legis.delaware.gov/BillDetail/141930.

Having failed to circumvent the new statute, Plaintiff dismissed the Plenary Action without prejudice and turned back to his books and records request. Notice of Voluntary Dismissal Without Prejudice, C.A. No. 2025-0209-MTZ, Dkt. 12. Months later, on June 20, Plaintiff initiated the present action seeking to enforce the Demand. Verified Compl. for Breach of Contract and to Compel Produc. of Books and Rs. Pursuant to 8 *Del. C.* § 220, Dkt. 1. The action was assigned to a Magistrate in Chancery, who held a trial on a paper record on September 23. Dkts. 2, 26. On October 1, the Magistrate Judge issued her Final Report, denying Plaintiff's inspection request. Dkt. 29; Final Report at 15. The Magistrate Judge found that Plaintiff lacked a proper purpose for inspection, relying on precedent holding that "a stockholder does not act with a proper purpose when seeking to use Section 220 to investigate matters that have already been placed at issue in a plenary . . . action." Final Report at 7. The Magistrate Judge acknowledged narrow exceptions to that "general rule," but concluded that the present facts did not fall into those exceptions, emphasizing that "[P]laintiff in this instance initiated the problem by rushing to file a [P]lenary [A]ction" and the "sequence of events" was the result of "[P]laintiff's own strategic decisions." *Id.* at 9, 11.

Plaintiff filed exceptions to the Final Report on October 1. Dkt. 28. Briefing was completed on December 4. Dkts. 35–36, 38. Oral argument is unnecessary.

## II. ANALYSIS

I have reviewed the trial record and the Magistrate in Chancery's determinations *de novo*. *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999). Good cause does not exist to expand the record. *See* Ct. Ch. R. 144(e).

"To inspect books and records under Section 220, a plaintiff must establish by a preponderance of the evidence that the plaintiff is a stockholder, has complied with the statutory form and manner requirements for making a demand, and has a proper purpose for conducting the inspection." *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *9 (Del. Ch. Nov. 24, 2020). "If a stockholder meets these requirements, the stockholder must then establish 'that each category of the books and records requested is essential and sufficient to the stockholder's stated purpose.'" *Id.* (quoting *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1035 (Del. 1996)). "In other words, the court must give the petitioner everything that is 'essential,' but stop at what is 'sufficient.'" *KT4 P'rs LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 751–52 (Del. 2019) (citation omitted).

As the Magistrate in Chancery explained in her Final Report, "Delaware courts have recognized that a stockholder who files a plenary action asserting claims

of mismanagement undercuts his alleged need to obtain documents under Section 220 to investigate the same alleged acts of mismanagement." *Schnatter v. Papa John's Int'l, Inc*., 2019 WL 194634, at \*11 (Del. Ch. Jan. 15, 2019), *abrogated in part on other grounds by Tiger v. Boast Apparel, Inc.*, 214 A.3d 933 (Del. 2019). When a stockholder files a plenary action challenging the same issues he seeks to investigate through his demand, he "effectively concede[s] that the books and records he seeks are not necessary or essential to his stated purpose of investigating mismanagement or wrongdoing." *Bizzari v. Suburban Waste Servs., Inc.*, 2016 WL 4540292, at \*6 (Del. Ch. Aug. 30, 2016); *see also, e.g.*, *King v. VeriFone Hldgs., Inc*., 12 A.3d 1140, 1148 (Del. 2011) (acknowledging that dismissal of a later-filed Section 220 action was proper when the "stockholder-plaintiff's plenary derivative complaint was still pending and the plenary court had not granted the plaintiff leave to amend"); *An v. Archblock, Inc.*, 2023 WL 7320253, at \*3 (Del. Ch. Nov. 7, 2023) (holding that "the 220 Complaint must be dismissed as a matter of law because [p]laintiff has already filed a plenary action challenging the same purported wrongdoing that he seeks to investigate through the [d]emand"), *R. & R. adopted*, 2024 WL 1365983 (Del. Ch. Apr. 1, 2024); *CHC Invs., LLC v. FirstSun Cap. Bancorp*, 2019 WL 328414, at \*5 (Del. Ch. Jan. 24, 2019) (recognizing that absent "special circumstances, the problems inherent in parallel plenary and Section 220

actions defeat [a plaintiff's] purpose for inspection"); *Cent. Laborers Pension Fund v. News Corp.*, 2011 WL 6224538, at *2 (Del. Ch. Nov. 30, 2011) (concluding that a stockholder was "unable to tender a proper purpose for pursuing its efforts to inspect" books and records because its "currently-pending derivative action necessarily reflect[ed] its view that it had sufficient grounds for alleging both demand futility and its substantive claims without the need for the assistance afforded by Section 220"), *aff'd*, 45 A.3d 139 (Del. 2012); *Baca v. Insight Enters., Inc.*, 2010 WL 2219715, at *4 (Del. Ch. June 3, 2010) ("[A] stockholder does not act with a proper purpose when the stockholder attempts to use Section 220 to investigate matters that the same stockholder already put at issue in a plenary derivative action."); *Taubenfeld v. Marriott Int'l, Inc.*, 2003 WL 22682323, at *3 (Del. Ch. Oct. 28, 2003) (explaining that filing a derivative action "was a certification under Rule 11 that the plaintiffs had enough information to support their allegations").

Plaintiff raises three primary arguments on exceptions. First, Plaintiff contends that the numerous cases cited above were all implicitly overruled by the Delaware Supreme Court's 2020 decision in *AmerisourceBergen Corp. v. Lebanon County Employees' Retirement Fund*, 243 A.3d 417 (Del. 2020). OB at 33. In *AmerisourceBergen*, the Supreme Court clarified that when a stockholder states a

proper purpose for inspection by demonstrating a credible basis to investigate possible wrongdoing, he is not required to "state in the demand all of the ways [he] might use the documents uncovered in the investigation."[2] *AmerisourceBergen*, 243 A.3d at 429. *AmerisourceBergen* further held that a stockholder pursuing an investigation is not required to "demonstrate that the wrongdoing or mismanagement [will be] actionable" in a lawsuit,[3] since the stockholder may "use the information obtained for more than one purpose." *Id.* at 431. *AmerisourceBergen* did not, however, upend well-worn case law explaining that a stockholder who files a plenary lawsuit challenging alleged misconduct has certified that the information he already has is sufficient for his purpose, such that he has no further need for books and records to investigate the same alleged misconduct.

---

[2] Plaintiff seems to suggest that under *AmerisourceBergen*, even if a stockholder has sufficient information to bring a lawsuit, he may need additional information to pursue other ends of his investigation. *See* OB at 36. Without foreclosing the possibility that this could be true under different facts, it is not the case here, where Plaintiff seeks to investigate a Merger post-closing. He identifies no conceivable "end" for his inspection other than filing a lawsuit, which he has already done.

[3] Plaintiff conflates actionability with proper purpose. *AmerisourceBergen*'s holding that "[t]he stockholder need not demonstrate that the alleged mismanagement or wrongdoing is actionable" is entirely consistent with the Magistrate Judge's ruling, supported by case law, that "post-plenary demands undermine the stockholder's" proper purpose for seeking books and records. 243 A.3d at 437; Final Report at 7–8. The filing of a plenary case is not the type of "merits-based defense" that ordinarily should not be considered in a Section 220 action because it "interferes with" the summary nature of the proceeding. *AmerisourceBergen*, 243 A.3d at 437.

Second, Plaintiff argues that even if the decisions cited above remain good law, the present facts are exceptional and support a different outcome. OB at 38. "Despite problems inherent in the sue first, ask questions later sequence, in special circumstances, Delaware courts have enforced a stockholder's Section 220 rights notwithstanding the stockholder's pending plenary complaint." *CHC Invs.*, 2019 WL 328414, at *3 (internal quotation marks omitted). Plaintiff relies on two cases presenting "special circumstances"—*King v. VeriFone Holdings, Inc.* and *Khanna v. Covad Communications Group, Inc.* The Magistrate Judge correctly concluded that the narrow exceptions recognized in those cases are inapplicable here.

In *King*, a stockholder plaintiff filed a plenary action in California federal court. 12 A.3d at 1141. The California court dismissed the claims with leave to re-plead and encouraged the plaintiff to demand books and records to improve his complaint. *Id.* at 1150. The Delaware Supreme Court upheld the plaintiff's right to inspection, explaining that "it is a proper purpose under Section 220 to inspect books and records that would aid the plaintiff in pleading demand futility in a to-be-amended complaint in a plenary derivative action, where the earlier-filed plenary complaint was dismissed on demand futility-related grounds without prejudice and with leave to amend." *Id.* But "[i]t was, in [*King*], the judicial determination that the allegations were not sufficient coupled with the judicially-granted leave to

amend that eliminated the inconsistency that one may find in the simultaneous filing of two related actions, as happened here." *News Corp.*, 2011 WL 6224538, at *1. By contrast, here, while Plaintiff chose to dismiss the Plenary Action, "no *judicial* action . . . occurred that would suggest a need or a reason for further pleadings or efforts to gather important facts to support a cognizable purpose for an inspection of [Summit]'s books and records." *Id.* (emphasis added).

In *Khanna*, a stockholder plaintiff filed suit to enforce his inspection rights under Section 220, then one month later, brought a class and derivative action out of concern that his claims would become time-barred. 2004 WL 187274, at *1, *3 (Del. Ch. Jan. 23, 2004). The Court concluded that the plaintiff had not waived his right to pursue his demand, explaining that "the overlap of the Section 220 action and the Derivative Action [had been] attributable to [the defendant's] failure to comply with its obligations under Section 220." *Id.* at *4. Unlike in *Khanna*, Summit's supposed delay in producing books and records did not cause Plaintiff to run up against a statute of limitations, prejudicing Plaintiff's rights.[4] Whatever

---

[4] Summit also accommodated Plaintiff with the Standing Agreement, which gave Plaintiff a contractual right to pursue books and records after the Merger closing extinguished Plaintiff's statutory standing.

"pressure" Plaintiff may have felt to pursue the Plenary Action while legislation was pending, Summit was not responsible for it.

Alternatively, Plaintiff argues that the facts of this case present special circumstances justifying a new exception to the general rule precluding a stockholder from seeking books and records after filing a plenary suit. I agree with the Magistrate Judge that a departure from our existing case law is unwarranted. Plaintiff argues that the law changed after he filed his Plenary Action, so any concession that "he had enough information to state a claim under the [old law] . . . does not mean that Plaintiff has conceded that he has enough information today." OB at 40–41; RB at 15. Plaintiff says he was "comfortable that he could state a claim under the then-applicable law based on the publicly available facts and applicable law," but he is no longer so confident. OB at 4. Yet Plaintiff does not explain why a codification of the definition of a controlling stockholder requires further factual investigation into the Merger now, when he concluded that the public record was sufficient to investigate possible breaches of fiduciary duty previously.[5]

---

[5] Plaintiff asserts that "[u]nder the law that governed at the time, these facts would likely have established Grupo Argos as the Company's controlling stockholder." OB at 4, 40. That is perhaps not as self-evident as Plaintiff suggests, given that Grupo Argos held just 31% of the company's voting power and appointed only three of eleven directors to the board. *See Turnbull v. Klein*, 2025 WL 353877, at \*10 (Del. Ch. Jan. 31, 2025) ("Pleading actual control is 'no easy task.'" (quoting *Larkin v. Shah*, 2016 WL 4485447, at \*13 (Del.

Plaintiff argues that "[i]t would have been malpractice" not to pursue the Plenary Action before the statutory amendments took effect because Grupo Argos held less than one-third of Summit's voting power. *See* OB at 4. Plaintiff's litigation strategy was his own. By choosing to pursue the Plenary Action, he forwent books and records. His sophisticated counsel no doubt knew that was the choice they were making.

Finally, Plaintiff asserts that the Magistrate Judge overlooked the Standing Agreement, which separately preserved his right to books and records. OB at 31. This argument was not fairly presented to the Magistrate Judge, and in any event fails on the merits. The Standing Agreement preserved Plaintiff's standing to seek books and records after the Merger closing by contractually replicating his statutory inspection right:[6]

---

Ch. Aug. 25, 2016))); *see also, e.g.*, *Flannery v. Genomic Health, Inc.*, 2021 WL 3615540, at *14 (Del. Ch. Aug. 16, 2021) (concluding that a complaint did not adequately allege that a 25% stockholder that appointed only two of eight directors was a controller); *Larkin*, 2016 WL 4485447, at *14–15 (concluding that a complaint did not adequately allege that a 23.1% stockholder affiliated with three of nine directors was a controller); *In re Morton's Rest. Gp., Inc. S'holders Litig.*, 74 A.3d 656, 665 (Del. Ch. 2013) (concluding that a complaint did not adequately allege that a 27.7% stockholder affiliated with two of ten directors was a controller).

[6] *See In re Zendesk, Inc. Section 220 Litig.*, 2023 WL 5496485, at *7 n.76 (Del. Ch. Aug. 25, 2023) (noting that analyzing inspection rights under Section 220 or a standing agreement leads to the same result), *R. & R. adopted*, (Del. Ch. 2023).

> The Company agrees that, for the period of one year after the execution of this Agreement, Stockholder shall continue to have the same right, power, and ability to enforce the Demand as Stockholder had prior to the closing of the [Merger].  In connection with any such lawsuit asserted by Stockholder during that one-year time frame, the Company shall not argue or present any defense that Stockholder lacks standing to enforce the Demand following the closing of the [Merger]; provided, however, that the Company reserves all arguments in opposition to any further production under 8 *Del. C.* § 220.

JX 15 at 2 (emphasis omitted).  Nowhere in the Standing Agreement did Summit waive its right to argue that Plaintiff lacked a proper purpose for seeking books and records based on his later decision to pursue a plenary action.

## III.  CONCLUSION

After *de novo* review, I am satisfied that Plaintiff's exceptions should be denied and that the Final Report must be adopted.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:    All counsel of record (by File & ServeXpress)